# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FERNANDA MALDONADO, HEATHER LIEBER and THAIS BLANDO, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>CULTURAL CARE, INC., GORAN RANNEFORS, NATALIE JORDAN, and JENS APPELKVIST,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 1:20-CV-10326-RGS

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.    The Responsibilities of LCCs..............................................................................3

    B.    The Federal Au Pair Program Regulations Governing LCCs .............................4

    C.    The Plaintiffs' Local Childcare Consultant Agreements ......................................5

    D.    Plaintiffs' Compensation from Cultural Care.......................................................6

    E.    This Action ...........................................................................................................7

LEGAL STANDARD ...........................................................................................................8

ARGUMENT.........................................................................................................................9

    A.    This Court Lacks Subject Matter Jurisdiction to Hear Plaintiffs' Claims...............9

    B.    The Amended Complaint Does Not Adequately Allege that  Defendants
            are Plaintiffs' Employers (Counts I-IV)...............................................................11

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G. ex rel. Maddox v. v. Elsevier, Inc.,*
  732 F.3d 77 (1st Cir. 2013)..................................................................12

*Local 589, Amalgamated Transit Union v. MBTA,*
  94 F. Supp. 3d 47 (D. Mass. 2015) ......................................................10

*Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., Inc.,*
  687 N.Y.S.2d 667 (N.Y. App. Ct. 1999)................................................11

*Casas Office Machines, Inc. v. Mita Copystar Am., Inc.,*
  42 F.3d 668 (1st Cir. 1994)............................................................10, 11

*Casey v. Dept. of Health & Human Servs.,*
  807 F.3d 395 (1st Cir. 2015)................................................................16

*Dynamex Operations West, Inc. v. Superior Court of Los Angeles County,*
  4 Cal. 5th 903 (CA Sup. Ct. 2018)......................................................13

*Ellicott v. Am. Capital Energy, Inc.,*
  906 F.3d 164 (1st Cir. 2018)................................................................11

*Feliciano-Hernández v. Pereira-Castillo,*
  663 F.3d 527 (1st Cir. 2011)................................................................12

*Gallagher v. Cerebral Palsy of Massachusetts, Inc.,*
  92 Mass. App. Ct. 207 (2017)..............................................................14

*Hamilton v. Partners Healthcare Sys., Inc.,*
  209 F. Supp. 3d 379 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) .............................9

*Hennighan v. Insphere Ins. Sols., Inc.,*
  38 F. Supp. 3d 1083 (N.D. Cal. 2014) ...........................................11, 13

*Iqbal v. Ashcroft,*
  556 U.S. 662 (2009)...............................................................................9

*Kluebel v. Black & Decker Inc.,*
  2011 WL 1677737 (2d Cir. 2011)........................................................10

*Lopez v. Acme Am. Envtl. Co.,*
  No. 12 CIV. 511 WHP, 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)..............................15, 17

*Lundy v. Catholic Health Sys. of Long Island Inc.,*
  711 F.3d 106 (2d Cir. 2013) ................................................................11

*Meyer v. U.S. Tennis Ass'n*,
    607 F. App'x 121 (2d Cir. 2015) ....................................................14

*N. Beacon 155 Assocs., LLC v. Mesirow Fin. Interim Mgmt. LLC*,
    135 F. Supp. 3d 1 (D. Mass. 2015) ...............................................5, 6

*Newman v. Burgin*,
    930 F.2d 955 (1st Cir. 1991)..........................................................11

*Ocasio–Hernández v. Fortuño–Burset*,
    640 F.3d 1 (1st Cir. 2011) ...............................................................9

*Rodrigues v. Genlyte Thomas Grp. LLC*,
    392 F. Supp. 2d 102 (D. Mass. 2005) ...........................................11

*Rudy v. City of Lowell*,
    777 F. Supp. 2d 255 (D. Mass. 2011) ..............................................6

*Sagar v. Fiorenza*,
    2014 WL 3697090 (Mass. Sup. Ct. July 4, 2014).........................14

*Scharf v. Isovia, Inc.*,
    2006 3780747 (Mass. App. Ct. Dec. 26, 2006) .............................14

*Sebago v. Boston Cab Dispatch, Inc.*,
    471 Mass. 321 (2015)..............................................................13, 14

*Soto-Torres v. Fraticelli*,
    654 F.3d 153 (1st Cir. 2011)..........................................................12

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998)...........................................................................8

*Sw. Research Inst. v. Unemployment Ins. Appeals Bd.*,
    81 Cal. App. 4th 705 (2000) ..........................................................15

*Torres-Negron v. J & N Records, LLC*,
    504 F.3d 151 (1st Cir. 2007).......................................................6, 8

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
    524 F.3d 315 (1st Cir. 2008)........................................................5, 6

*Yellow Taxi Co. of Minneapolis v. N.L.R.B.*,
    721 F.2d 366 (D.C. Cir. 1983)................................................16, 17

*Yessayan v. FedEx Ground Package Sys., Inc.*,
    No. CV05-8872 ER VBKX, 2007 WL 5162454 (C.D. Cal. Jan. 3, 2007),
    aff'd, 301 F. App'x 716 (9th Cir. 2008) .........................................15

**Rules and Regulations**

22 C.F.R. § 62.31 ............................................................................................. 1, 4, 15

22 C.F.R. § 62.31(c) ............................................................................................ 3, 15

22 C.F.R. § 62.31(c)(5) ........................................................................................ 3, 13

22 C.F.R. § 62.31(l)(1) ............................................................................................... 4

22 C.F.R. § 62.31(l)(3) ............................................................................................... 4

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1, 8

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 9

Local Rule 7.1 ........................................................................................................ 19

Defendants Cultural Care, Inc., Goran Rannefors, Natalie Jordan, and Jens Appelkvist (collectively, "Cultural Care" or the "Defendants") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint asserted by Plaintiffs Fernanda Maldonado, Heather Lieber, and Thais Blando (collectively, the "Plaintiffs") on behalf of themselves and a putative nationwide class and several sub-classes in the above-captioned action (the "Amended Complaint").

## INTRODUCTION

Cultural Care is a U.S. State Department-designated sponsor of the Federal au pair cultural exchange program (the "program" or the "Au Pair Program"). As a designated sponsor, Cultural Care helps connect young foreign nationals from around the world who wish to participate in the program as au pairs with American "host families." Cultural Care is required by the comprehensive Federal regulations that govern the Au Pair Program to engage Local Childcare Consultants ("LCCs") to assist and advise au pairs and host families during the program year. *See* 22 C.F.R. § 62.31.

The Federal regulations also require Cultural Care to ensure that LCCs monitor, regularly meet with, and counsel their assigned au pairs and host families with respect to both routine and emergency matters, and to report to their State Department-designated sponsor Cultural Care any serious or unusual incidents that have arisen in their judgment. The regulations require that LCCs live within an hour's drive of the au pairs and host families whom they service. In working with the au pairs and host families, LCCs exercise significant autonomy with respect to the hours they work, the site(s) from which they work, the nature and manner of the advice and assistance they provide, as well as the means by which they render such services. LCCs are also free to accept engagements from other sponsors besides Cultural Care.

1

Cultural Care engaged the Plaintiff LCCs to assist and advise au pairs and host families. Plaintiffs allege that Cultural Care has misclassified them as independent contractors, and therefore has violated, and continues to violate, Federal and state labor laws by failing to pay them minimum and overtime wages.  But, despite another bite at the apple by amending their complaint after Cultural Care filed a motion to dismiss, Plaintiffs' allegations that Cultural Care owes them unpaid wages remain conclusory and devoid of any factual support.  Plaintiffs do not—and cannot—state a cognizable claim against Cultural Care for unpaid wages under any of the statutes at issue.

First, this Court lacks subject matter jurisdiction to hear this matter.  In light of several of Plaintiffs' new allegations, it is now indisputable that each Plaintiff received compensation at a rate higher than the Federal minimum wage, and thus that their claims under the Fair Labor Standards Act (the "FLSA") fail as a matter if law.  Consequently, there is no federal question as a basis for jurisdiction.  And, because Plaintiff Heather Lieber and Cultural Care, as well as Defendants Jordan and Rannefors, are Massachusetts citizens, there is no diversity jurisdiction. With no original jurisdiction over Plaintiffs' federal claims, this Court may not exercise supplemental jurisdiction over Plaintiffs' state law claims.  Hence, the Amended Complaint should be dismissed on that basis alone.

Second, Cultural Care does not qualify as Plaintiffs' employer for the independent reason that Plaintiffs do not allege that they provided services to Cultural Care, but rather only to the au pairs and host families under the Federal regulations.

Third, the LCCs are not employees of Cultural Care or, by extension, the individual Defendants, who are officers or employees of Cultural Care.  Any purported "control" that Cultural Care exercised over the Plaintiffs was pursuant to (and required by) the regulations governing the Au Pair Program—as Plaintiffs concede in their Amended Complaint.  That is not the type of

control necessary to create an employment relationship, as a matter of law. Plaintiffs' scant allegations of control outside of Cultural Care's compliance-based conduct are conclusory and, in any event, in conflict with the explicit terms of Plaintiffs' contracts with Cultural Care.

Accordingly, the Amended Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND

Cultural Care is an organization designated and regulated by the United States Department of State as a "sponsor" of the Federal au pair cultural exchange program.[1] (Am. Compl. ¶ 12.) As part of the Au Pair Program, Cultural Care helps U.S.-based "host families" connect with au pairs from 24 different countries. (*See id.* ¶ 13.) "[P]ursuant to Department of State regulations" governing the program, Cultural Care is required to engage LCCs to assist and counsel au pairs and their respective host families. (*Id.* ¶ 17; *see* 22 CFR § 62.31(c).)

### A.      The Responsibilities of LCCs

The Plaintiffs allege that the core responsibility of LCCs is to "address any concerns, questions or needs from au pairs or host families; meet with and respond to au pairs concerning any issues that arise, such as homesickness, physical illness, or family matters in their home country" (Am. Compl. ¶ 32), and to "mediate disputes and other issues between their assigned au pairs and their host families" (*id.* ¶ 26). The Federal regulations governing the Au Pair Program confirm that LCCs are engaged to advise their assigned au pairs and host families "in both routine and emergency matters arising from the au pair's participation in their exchange program." 22 C.F.R. § 62.31(c)(5). There is no allegation in the Amended Complaint—nor could there be— that Plaintiffs provided services to Cultural Care in connection with their job of counseling au pairs and host families.

---

[1] Defendants Goran Rannefors, Jens Appelkvist, and Natalie Jordan are, respectively, Cultural Care's President, Treasurer, and Senior Vice President. (Am. Compl. ¶¶ 5-7.)

### B.     The Federal Au Pair Program Regulations Governing LCCs

As Plaintiffs allege, Cultural Care "is required" by Federal regulation "to ensure that LCCs perform specific functions" for the host families and au pairs.  (Am. Compl. ¶ 17.)  For example, Plaintiffs allege that Cultural Care is obligated by regulation to:

> [r]equire that each [LCC] maintain a record of all personal monthly contacts (or more frequently as required) with each au pair and host family for which he or she is responsible and issues or problems discussed;
>
> [r]equire that all [LCCs] contact au pair participants and host families twice monthly for the first two months following a placement other than the initial placement for which the au pair entered the United States;
>
> [r]equire that [LCCs] not devoting their full time and attention to their program obligations are responsible for no more than fifteen au pairs and host families; and
>
> [r]equire that each [LCC] is provided adequate support services by a regional organizational representative.

(*Id.* ¶ 19 (citing 22 C.F.R. § 62.31).)

Pursuant to the Au Pair Program regulations, Cultural Care is obligated to "[r]equire monthly personal contact by the [LCC] with each au pair and host family for which the counselor is responsible. Counselors shall maintain a record of this contact."  22 C.F.R. § 62.31(l)(1).  As Plaintiffs state in their Amended Complaint, Cultural Care explains on its website:

> For over 25 years, the U.S. Department of State has been overseeing au pair programs in the United States, and they have created a series of safety nets that help ensure that both host families and au pairs are safe, happy and thriving together. . . . One of the most critical government and agency-mandated safety nets is the LCC monthly check in.

(Am. Compl. ¶ 24.)  Cultural Care also must "[r]equire that all local and regional counselors are appraised of their obligation to report unusual or serious situations or incidents involving either the au pair or host family."  22 C.F.R. § 62.31(l)(3).

### C.      The Plaintiffs' Local Childcare Consultant Agreements

To ensure that LCCs comply with the Au Pair Program regulations, Cultural Care enters into a Local Childcare Consultant Agreement with every LCC (the "LCC Agreement").[2]  Blando executed her agreement on April 30, 2014 (Ex. A); Lieber executed hers on October 5, 2015 (as Heather Wasilewski) (Ex. B); and Maldonado executed hers on July 10, 2019 (Ex. C).[3]

In Section 3 of each of Plaintiffs' LCC Agreement, they confirmed that their responsibilities were to "maintain ongoing personal contact with and assist current au pairs and host families within [their] designated region in accordance with the Regulations; to facilitate the replacement of au pairs in transition; and to mediate au pair/host family problems that may arise." (Ex. A § 3; B § 3; Ex. C. § 3.)  Section 8 of each LCC Agreement further states: "It is understood that you will conduct all meetings, interviews, orientations and other in-person engagements required by the Regulations personally as the Local Childcare Consultant."  (Ex. A § 8; Ex. B § 8; Ex. C § 8.)

In Section 4 of their LCC Agreements, Plaintiffs agreed that they themselves (not Cultural Care) would "determine, in accordance with the Regulations as they may apply, the place or places where [they would] perform and the hours during which [they would] render services hereunder, subject to . . . the requirement to meet deadlines and attend scheduled meetings" with Cultural Care.  (Ex. A § 4; Ex. B § 4; Ex. C § 4.)  Under this Section 4, Plaintiffs were also "free to accept engagements from others during the term of this Agreement."  (Ex. A § 4; Ex. B § 4; Ex. C § 4.)

---

[2]  Plaintiffs incorporate by reference in the Amended Complaint their contracts with Cultural Care (*see, e.g.*, ¶¶ 22-23, 25-27, 30, 32-35), and the contracts are integral to Plaintiffs' allegations and claims, and therefore may be considered on this motion.  *See, e.g.*, *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008); *N. Beacon 155 Assocs., LLC v. Mesirow Fin. Interim Mgmt. LLC*, 135 F. Supp. 3d 1, 4 n. 2 (D. Mass. 2015).

[3]  "Ex." refers to the exhibits enclosed with the declaration of Brian F. Shaughnessy, dated June 1, 2020, filed concurrently with this brief.

**D.      Plaintiffs' Compensation from Cultural Care**

Contrary to the conclusory allegations in the Amended Complaint, each of the Plaintiffs received compensation from Cultural Care in excess of the federal minimum wage for their time as LCCs.

Plaintiff Maldonado alleges in the Amended Complaint that she worked as an LCC from June 2019 to December 2019.  (Am. Compl. ¶ 51.)  According to Cultural Care's records, her start date was actually July 16, 2019 and her end date was December 10, 2019.[4]  (Exs. D-E.)  Maldonado therefore worked 4.8 months as an LCC.  She alleges that she worked 40 hours per month[5] during that time period.  (Am. Compl. ¶ 52).  That is a total of 192 hours worked (4.8 months x 40 hours per month).  At the federal minimum wage of $7.25 per hour, *see* 29 U.S.C. § 206, Maldonado would have received $1,392.00 for her work as an LCC.  In fact, Maldonado received $1,411.35 in compensation from Cultural Care, as reflected on her 2019 Form 1099 (Ex. F), and thus was compensated at a higher rate than the federal minimum wage.

Plaintiff Blando began as an LCC in 2014, but the statute of limitations for her FLSA claim is, at most, three years prior to the filing of this action, expiring on February 19, 2020.[6]  The

---

[4]      Plaintiffs also incorporate by reference in the Amended Complaint the records of their compensation from Cultural Care (*see, e.g.*, ¶¶ 51-54, 56-59, 61-64), and which are integral to Plaintiffs' allegations and claims, and thus may be considered on this motion.  *See, e.g.*, *Trans-Spec Truck Serv., Inc.*, 524 F.3d at 321; *N. Beacon 155 Assocs.*, 135 F. Supp. at 4 n. 2. Additionally, extrinsic evidence is appropriately considered on a motion for lack of subject matter jurisdiction.  *See, e.g.*, *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007) (noting that "where the defendant makes a 12(b)(1) motion to dismiss, the parties should submit evidence, much as they would for a summary judgment motion").

[5]      Cultural Care accepts Plaintiffs' allegations as to their hours worked as true solely for the purposes of this motion.

[6]      Accepting, *arguendo*, Plaintiff's allegations of a "willful" FLSA violation, the statute of limitations for an FLSA claim is three years.  *See, e.g.*, *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 263 (D. Mass. 2011).  For a non-willful violation, the statute of limitations is two years.  *Id.*

relevant period thus begins, at the earliest, in 2017.  Blando's time as an LCC ended on July 31, 2017, for a total of seven months worked in 2017. (Ex. G; Am. Compl. ¶ 61.)  Blando alleges that she worked 60 hours per month for those seven months.  (Am. Compl. ¶ 62.)  Accepting her allegations as true, Blando therefore worked a total of 420 hours as an LCC in 2017 (7 months x 60 hours per month).  At the federal minimum wage of $7.25 per hour, Blando would have received $3,045.00 for her work as an LCC during that period.  In fact, Blando's Form 1099 for 2017 shows that she received $3,547.00 in compensation from Cultural Care (Ex. H), and thus was compensated at a higher rate than the federal minimum wage.

Plaintiff Lieber began her work as an LCC in 2015, but, again, the relevant period for her FLSA claim begins, at the earliest, three years prior to the filing of this action, in 2017.  Lieber worked as an LCC through June 2017, for a total of six months worked in 2017.[7]  Lieber alleges that she worked 40 hours per month as an LCC during that period.  (Am. Compl. ¶ 57.)  Accepting her allegations as true, Lieber therefore worked a total of 240 hours as an LCC in 2017 (6 months x 40 hours per month).  At the federal minimum wage of $7.25 per hour, Lieber would have received $1,740.00 for her work as an LCC for those six months.  In fact, Lieber's Form 1099 for 2017 shows that she received $1,896.93 in compensation from Cultural Care (Ex. J), and thus was compensated at a higher rate than the federal minimum wage.

### E.    This Action

On February 19, 2020, Plaintiffs commenced this action against Defendants, contending that Cultural Care misclassified them as independent contractors, and asserting claims for unpaid

---

[7]  Lieber technically remained an LCC until September 2017 but did not work any hours after June 2017; thus, the months after June 2017 are irrelevant.  Instead, the undisputable evidence of Lieber's cessation of work for Cultural Care in June 2017 is the fact that she immediately went on leave after her publicized arrest by the Milford, CT police department for abandoning a child at that time, *i.e.*, in June 2017. (Ex. I.)

wages under the FLSA, 29 U.S.C. §§ 201, *et seq.*, (Count I), the Massachusetts Wage Act, M.G.L. c. 149 §§ 148, 150 (Count II), the New York Minimum Wage Act, Labor Law art 19, §§ 652 and 663, (Count III), and California wage law, including California Labor Code §§ 1194, § 1454 et seq., and California Wage Order 15-2001, (Count IV).   (Am. Compl. ¶¶ 93-115.)   Plaintiffs purport to bring their claims on behalf of a putative nationwide class of LCCs, as well as sub-classes of LCCs who worked in Massachusetts, New York, and California.   (*Id.* ¶¶ 67-92.)   While each of Plaintiffs' claims applies to Cultural Care, only Count II applies to the individual Defendants.

On May 1, 2020, Plaintiffs filed the Amended Complaint, removing Plaintiff Christine Sgueglia, who, along with hundreds of other LCCs, is subject to a mandatory arbitration provision, and adding Plaintiff Heather Lieber, as the putative Massachusetts class representative.   Plaintiffs also added several allegations in a futile attempt to make their claims for unpaid wages appear viable.   However, these new allegations do nothing to correct Plaintiffs' failure to state a claim against Cultural Care, and in fact, confirm that Plaintiff's FLSA claims are invalid, demonstrating that this Court lacks subject matter jurisdiction to hear this case.

## LEGAL STANDARD

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), where "the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." *Torres-Negron*, 504 F.3d at 163.   Therefore, a court should grant a motion to dismiss under Rule 12(b)(1) where, as here, the relevant facts are not in dispute and the moving party is entitled to prevail as a matter of law. *See id.*   A court that lacks subject matter jurisdiction lacks "the statutory or constitutional power to adjudicate the case."   *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998).

With respect to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it is well settled that a complaint must be dismissed if it fails to state a claim upon which relief can be granted. *See, e.g.*, *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 386 (D. Mass. 2016), aff'd, 879 F.3d 407 (1st Cir. 2018). Although courts accept a plaintiff's allegations as true at the pleading stage, this tenet "is inapplicable to legal conclusions." *Id.* Claims that rest solely on "'legal conclusion[s] couched as . . . fact[ ]' or '[t]hreadbare recitals of the elements of a cause of action'" must be dismissed. *Id.* (citing *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011)). Additionally, speculative allegations that do not allege the necessary facts to support a plaintiff's claims but permit a court to infer only "the mere possibility of misconduct" fail to state a plausible claim. *Iqbal v. Ashcroft*, 556 U.S. 662, 679 (2009).

## **ARGUMENT**

### A.    This Court Lacks Subject Matter Jurisdiction to Hear Plaintiffs' Claims

#### 1.    Plaintiffs' FLSA Claims are Invalid Because They Were Paid More than the Federal Minimum Wage

As detailed above (*supra* pp. 6-8), it is indisputable—based on both Plaintiffs' own allegations as well as their unambiguous payment records—that each of them received compensation from Cultural Care during the relevant periods at a rate higher than the federal minimum wage. Accordingly, Plaintiffs' claims for unpaid wages under the FLSA fail as a matter of law. *See, e.g.*, *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 393 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) (noting that "the FLSA requires employers to pay a minimum wage for all hours worked" in dismissing complaint for failure to show compensation below minimum wage).

Plaintiffs allege, without any requisite factual support, that "Cultural Care required the Plaintiffs to travel to interviews, often entailing hours of travel in their own vehicles, for which

they were not compensated" (Am. Compl. ¶ 35), and that "[e]ach Plaintiff incurred out of pocket expenses for travel and required events, for which they were not compensated or reimbursed" (*id.* ¶ 49). These are precisely the type of "mere conclusory statements" that cannot support a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In any event, travel time is generally not compensable under the FLSA for individuals such as Plaintiffs, who performed tasks on their own schedule. *See, e.g.*, *Kluebel v. Black & Decker Inc.,* 2011 WL 1677737 *at 361 (2d Cir. 2011) ("[T]he FLSA does not treat ordinary home-to-job-site travel as compensable. The regulations have reflected this fact for at least fifty years[.] . . . The fact that Kuebel performs some administrative tasks at home, on his own schedule, does not make his commute time compensable any more than it makes his sleep time or his dinner time compensable."); *Local 589, Amalgamated Transit Union v. MBTA*, 94 F. Supp. 3d 47, 50 (D. Mass. 2015) (under the FLSA, "regular commuting activities are not compensable").

Cultural Care's unrebutted time and compensation records maintained in the ordinary course show Plaintiffs' compensation for the relevant periods. These records, together with Plaintiffs' own allegations, show that the Plaintiffs were paid in excess of the federal minimum wage for all hours they allege they worked as LCCs. Plaintiffs' FLSA claims therefore should be dismissed, with prejudice.

### 2. This Court's Lack of Original Jurisdiction is Fatal to Plaintiffs' State Law Claims

Plaintiffs' inability to assert a claim against Cultural Care under the Federal FLSA precludes this Court from hearing any of Plaintiffs' state law claims.

Absent their FLSA claim, Plaintiffs fail to assert a basis for federal jurisdiction—nor could they. (Am. Compl. ¶ 10-11.) When a "case involves no federal question," then "[j]urisdiction stands or falls upon diversity of citizenship." *Casas Office Machines, Inc. v. Mita Copystar Am.,*

*Inc.*, 42 F.3d 668, 673 (1st Cir. 1994).  Diversity jurisdiction requires "complete diversity among the parties," meaning no opposing parties may be citizens of the same state.  *Id.*  As Plaintiffs note in their Amended Complaint, Cultural Care is a Massachusetts corporation.  (Am. Compl. ¶ 4.) Plaintiff Heather Lieber is also a Massachusetts citizen.  (*Id.* ¶ 2.)  Accordingly, this Court also lacks subject matter jurisdiction over the parties on the basis of a lack of diversity.  *See, e.g.*, *Rodrigues v. Genlyte Thomas Grp. LLC*, 392 F. Supp. 2d 102, 110 (D. Mass. 2005) (finding lack of subject matter jurisdiction where one plaintiff and defendant were both citizens of Massachusetts).

Without federal question or diversity jurisdiction, there is no basis for this Court to maintain supplemental jurisdiction over Plaintiffs' state law claims.  As the First Circuit has held, the "power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit." *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir. 1991) (affirming dismissal of state law claims for "lack of a supporting federal claim").  Here, there is no diversity and, without the FLSA claim, no substantial federal claim in the lawsuit.  Accordingly, all of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.  *See id.*

    **B.**    **The Amended Complaint Does Not Adequately Allege that**
          **Defendants are Plaintiffs' Employers (Counts I-IV)**

Under each of the four statutes at issue, a claim for unpaid wages may be brought only by an "employee" against his or her "employer." *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) ("lack of an employer-employee relationship" results in dismissal of FLSA claims); *Ellicott v. Am. Capital Energy, Inc.,* 906 F.3d 164, 169 (1st Cir. 2018) ("The [Massachusetts] Wage Act imposes liability on employers who fail to pay wages earned by their employees."); *Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., Inc.*, 687 N.Y.S. 2d

667, 669 (N.Y. App. Ct. 1999) ("In order to state a claim under [New York Labor Law], a plaintiff must first demonstrate that he or she is an employee."); *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1097 (N.D. Cal. 2014), aff'd, 650 F. App'x 500 (9th Cir. 2016) (California labor law requires an "employer-employee relationship.").

Plaintiffs fail to allege the requisite facts demonstrating that they actually provided services to Cultural Care, or that Cultural Care exerted "control" over them—both of which must be demonstrated for them to be deemed Cultural Care's employees. Rather, the Amended Complaint is barren of the requisite supporting facts, and thus improperly "depends entirely upon speculation and surmise." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013); *see Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 539 (1st Cir. 2011) (dismissal proper where plaintiff "fail[ed] to provide facts" supporting her claims); *Soto-Torres v. Fraticelli*, 654 F.3d 153, 160 (1st Cir. 2011) (plaintiff was "unable to provide adequate facts").

Indeed, the allegations of "control" that Cultural Care purportedly exerted over Plaintiffs were all part of Cultural Care's duty to comply with the Au Pair Program regulations. That does not—and cannot—create an employment relationship. Plaintiffs attempt to circumvent this with a new allegation (Am. Compl. ¶ 20), that Cultural Care imposed "its own additional requirements for LCCs," but that allegation, again, is wholly conclusory, lacking any factual support. Moreover, Plaintiffs concede that their services were provided to *the host families and au pairs* to which they were assigned, which by itself precludes Cultural Care from being considered their employer.

Plaintiffs' conclusory allegation (Am. Compl. at 1-2) that "Cultural Care employed the Plaintiffs and others as their local organization representatives" and thus "misclassified" them "as independent contractors" therefore fails as a matter of law. Accordingly, Plaintiffs fail to state a valid claim for unpaid wages against Defendants.

12

### 1.    Defendants are Not Plaintiffs' Employer Because Plaintiffs Provided No Services to Cultural Care

Under Massachusetts law, the "threshold question" in determining whether a party is an employer "is whether the plaintiff[] provided services to the defendant[]." *Sebago v. Boston Cab Dispatch, Inc.*, 471 Mass. 321, 329 (2015). If the plaintiff has not provided any such services to the defendant, the defendant does not qualify as an "employer." *See id.* at 332 (summary judgment "should have been rendered against the plaintiffs with respect to USA Taxi" because the "plaintiffs did not provide services to USA Taxi"). A similar standard applies in California. *See, e.g.*, *Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*, 4 Cal. 5th 903, 959 (CA Sup. Ct. 2018) (those "providing services to the business" alleged to be an employer are employees or independent contractors); *Hennighan*, 38 F. Supp. 3d at 1097 (an employer-employee relationship exists "[w]here a plaintiff has provided services to the employer").

Plaintiffs do not allege any facts demonstrating that they provided services to Cultural Care. Instead, Plaintiffs repeatedly allege—correctly—that their services were provided to the au pairs and host families to whom they were assigned. (*See, e.g.*, Am. Compl. ¶ 17 ("LCCs perform specific functions in working with Cultural Care's au pairs and host families"); *id.* ¶¶ 26, 32 (core responsibility of LCCs is to "address any concerns, questions or needs from *au pairs* or host families; meet with and respond to au pairs concerning any issues that arise" and "mediate disputes and other issues between their assigned *au pairs* and their host families").) The Au Pair Program regulations confirm this arrangement, providing that LCCs are engaged to advise their assigned au pairs and host families "in both routine and emergency matters arising from the au pair's participation in their exchange program." 22 C.F.R. § 62.31(c)(5).

Plaintiffs' conclusory allegations that they "worked for Defendants" (Am. Compl. ¶¶ 1-3) and that Cultural Care was required to "employ" them "to carry out [Cultural Care's] au pair

operations" (*id.* ¶ 17) are bereft of the necessary factual or legal support to survive a motion to dismiss. *See O'Hara*, 306 F. Supp. 3d at 458 (conclusory allegations insufficient).[8] Those scant allegations also contradict Plaintiffs' numerous other allegations that they, in fact, provided services to au pairs and host families. Accordingly, because Plaintiffs do not—and cannot— plausibly allege that they provided services to Cultural Care, they cannot state a valid claim for unpaid wages as purported employees of Cultural Care. *See, e.g.*, *Sebago*, 471 Mass. at 332; *Gallagher v. Cerebral Palsy of Massachusetts, Inc.*, 92 Mass. App. Ct. 207, 214 (2017) ("Gallagher did not provide services to CPM and cannot be deemed its employee.").

Because Plaintiffs fail to plausibly allege that Cultural Care was their employer, they also fail to state a valid claim for relief under the Massachusetts Wage Act against the individual Defendants, who are officers or employees of Cultural Care. *See, e.g., Scharf v. Isovia, Inc.,* 2006 3780747, at *1 n.3 (Mass. App. Ct. Dec. 26, 2006) ("The individual liability of [defendant] is predicated on his position as chief financial officer and person in control of Isovia, Inc., [plaintiffs] employer."); *Sagar* v. *Fiorenza*, 2014 WL 3697090, at *4 n.5 (Mass. Sup. Ct. July 4, 2014) ("As owner and corporate officer of Ambassador, Mr. Fiorenza may be held individually liable to the extent that Ambassador is found to be liable for violations of the Wage Act.").

### 2. Cultural Care's Compliance-Based Conduct Under the Au Pair Program Regulations Did Not Create an Employment Relationship with Plaintiffs

The hallmark of an employment relationship is the alleged employer's exertion of control over the purported employee. *See, e.g., Meyer v. U.S. Tennis Ass'n*, 607 F. App'x 121, 121–23 (2d Cir. 2015) (under both the FLSA and New York wage law, "the critical inquiry in determining

---

[8]  Plaintiffs quote liberally from the Au Pair Program regulations, but it is noteworthy that nowhere in their Amended Complaint do they cite to any part of the regulations that specify that a sponsor is required to "employ" LCCs – nor could they cite to any part of the regulations, as there is nothing therein so stating.

whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.") (internal quotation marks and citation omitted); *Lopez v. Acme Am. Envtl. Co.*, No. 12 CIV. 511 WHP, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012) ("The 'overarching concern' in determining whether an entity is an 'employer' is whether the entity 'possessed the power to control the workers in question[.]'") (citation omitted).

Plaintiffs themselves allege that Cultural Care "is required to ensure that LCCs perform" the "specific functions" outlined in the Amended Complaint "pursuant to Department of State regulations." (Am. Compl. ¶ 17.) Each of those functions, including that LCCs monitor, regularly meet with, and counsel their assigned au pairs and host families (*id.* ¶¶ 18, 22-23, 25-27, 31) all stem directly from Cultural Care's obligation to ensure compliance with the Au Pair Program regulations. *See* 22 C.F.R. § 62.31(c), (i), (l). Section 8 of each of Plaintiffs' LCC Agreements with Cultural Care confirms this, stating: "It is understood that you will conduct all meetings, interviews, orientations and other in-person engagements required by the Regulations personally as the Local Childcare Consultant." (*E.g.*, Ex. A § 8.) Plaintiffs, in fact, concede that Cultural Care engages LCCs because it must "[p]ursuant to Department of State regulation[] 22 C.F.R. § 62.31 . . . to carry out certain requirements of the [Au Pair Program]." (Am. Compl. at 1.)

In short, Plaintiffs' allegations that Cultural Care exerted control over them are predicated on this framework of regulatory requirements that the law itself imposed; this control was nothing more than Cultural Care complying with the regulations issued by the *federal government*. That is not a valid basis on which to predicate an employment relationship. *See, e.g.*, *Sw. Research Inst. v. Unemployment Ins. Appeals Bd.*, 81 Cal. App. 4th 705, 709 (2000) ("[W]here the method of performing a task is dictated by . . . regulations imposed by the government, the principal is not

15

exercising the manner and means of control as an employer."); *Yessayan v. FedEx Ground Package Sys., Inc.*, No. CV05-8872 ER VBKX, 2007 WL 5162454, at *2 (C.D. Cal. Jan. 3, 2007), aff'd, 301 F. App'x 716 (9th Cir. 2008) ("[E]fforts to ensure the worker's compliance with government regulations, even when those efforts restrict the manner and means of performance, do not weigh in favor of employee status."); *Yellow Taxi Co. of Minneapolis v. N.L.R.B.*, 721 F.2d 366, 376 (D.C. Cir. 1983) ("Reasonable efforts to ensure compliance with governmental regulations do not evidence control unless pervasive control by the employer exceeds to a significant degree the scope of the government control."); *cf. Casey v. Dept. of Health & Human Servs.*, 807 F.3d 395, 406 (1st Cir. 2015) (even though defendant "exercised significant control" over plaintiff's "job duties," no joint employer relationship was found because such control was exerted in "overseeing" and "setting performance criteria" prescribed by government division).

Plaintiffs' scant additional allegations of Cultural Care's purported control—*e.g.*, that "LCCs do not have autonomy in making certain decisions regarding au pair and host family situations and must refer these matters to, and take direction from, their supervisors and other Cultural Care staff" (Am. Compl. ¶ 28)—are vague, conclusory, and devoid of the necessary factual support. *See O'Hara*, 306 F. Supp. 3d at 458 (ignoring allegation that was, "by itself, too 'conclusory' and 'speculative'") (citation omitted). The terms of Plaintiffs' LCC Agreements (and the regulations themselves) tell a different story, in which LCCs were allowed to exercise significant autonomy with respect to: (i) the nature and manner of the advice and assistance they provided to au pairs and host families; (ii) the means by which they rendered such services; (iii) the places in which they performed their services for au pairs and host families; (iv) the hours during which they would render such services; and (v) whether to accept engagements from others. (*See* Ex. A § 4; Ex. B § 4; Ex. C § 4.)  Further, as noted above, a modicum of control is not

sufficient; rather, any alleged control must exceed "by a significant degree the scope of government control," *Yellow Taxi Co. of Minneapolis v. N.L.R.B.*, 721 F.2d at 376, in order to create an employment relationship.

Accordingly, Cultural Care cannot be deemed Plaintiffs' employer, as a matter of law. *See, e.g.*, *Lopez*, 2012 WL 6062501, at *5 ("Because Plaintiffs fail to allege that the 'economic reality' of the relationship between Plaintiffs and the Corporate Moving Defendants was one of control, they fail to state an FLSA or [New York Labor Law] claim[.]").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety, with prejudice.


Dated: June 1, 2020
        Boston, Massachusetts


                                        Respectfully submitted,

                                        CULTURAL CARE, INC., GORAN
                                        RANNEFORS, NATALIE JORDAN, AND
                                        JENS APPELKVIST,

                                        By their attorneys,


                                        */s/ Harvey J. Wolkoff*
                                        Harvey J. Wolkoff (BBO #532880)
                                        Brian F. Shaughnessy (*pro hac vice*)
                                        Quinn Emanuel Urquhart & Sullivan LLP
                                        111 Huntington Ave., Suite 520
                                        Boston, MA  02199-3600
                                        harveywolkoff@quinnemanuel.com
                                        brianshaughnessy@quinnemanuel.com
                                        (617) 712-7100

## LOCAL RULE 7.1 CERTIFICATION

I certify that Defendants have complied with the provisions of Local Rule 7.1 by conferring with counsel for Fernanda Maldonado, Heather Lieber, and Thais Blando on or about May 6, 2020. The parties were unable to agree with respect to the issues raised in Defendants' motion to dismiss, and are thus at an impasse and require the Court's assistance to resolve the dispute.

Dated:  June 1, 2020

> */s/ Brian F. Shaughnessy*
> Brian F. Shaughnessy

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed today through the Court's ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent by U.S. Mail to those indicated as non-registered participants on June 1, 2020.

Dated:  June 1, 2020

> */s/ Brian F. Shaughnessy*
> Brian F. Shaughnessy